Eastern District of Kentucky
**FILED**

**MAY 2 0 2005**

AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

**NOT FOR PUBLICATION OR CITATION**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON

CIVIL ACTION NO. 04-CV-08-KSF

JAKI CAIN                                                            PLAINTIFF

VS:                    **MEMORANDUM OPINION AND ORDER**

JOE BOOKER, JR., ET AL.                                      DEFENDANTS

        This matter is before the Court on the motion of two of the defendants, Warden Joe Booker

and Attorney General John Ashcroft, to dismiss, or in the alternative, for summary judgment [Record

No. 40]. The plaintiff has filed a response [Record No. 43], to which the defendants have submitted

a reply [Record No. 46].

BACKGROUND

        On January 8, 2004, Jaki Cain, a federal prisoner in the custody of the Bureau of Prisons

("BOP") who was being held in the local jail, the Fayette County Detention Center ("FCDC"), in

Lexington, Kentucky, initiated the instant *pro se* civil rights action pursuant to 28 U.S.C. §1331 and

the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).

She was later granted permission to proceed herein *in forma pauperis*.

        In her complaint, Cain alleged that while she had been housed in Lexington's BOP facility,

the Federal Medical Center, specifically at a satellite camp named Atwood Camp on the grounds,

certain named and unnamed unknown defendants violated (1) her constitutional rights under the

First, Fourth, Eighth, and Fourteenth Amendments; (2) federal statutes; (3) BOP policy; and (4) state

law. She sought specific injunctive relief and damages, including punitive damages.

Upon initial screening, the Court summarized the plaintiff's specific allegations as follows:

The plaintiff alleges that while she was a prisoner at the federal prison camp in Lexington, she had a sexual relationship, described as consisting of "sexual acts" and "sexual contact" as defined in 18 U.S.C. §2246, with Defendant Officer Goines. It began in the second week of July of 2003 and continued for two months, their meeting approximately once or twice per week. The plaintiff claims that during this time, Goines gave her and other inmates money to purchase food from vending machines and brought in food items from outside the institution.

The plaintiff also alleges that she had a sexual relationship with another BOP officer, Curtis Martin, during the same time. Their meetings began a week earlier and occurred at least once a week, usually on Saturday evenings, until September 9, 2003. During this time, Defendant Martin gave her "numerous gifts," including gum and money, e.g., $90.00 on July 9th and $80.00 on August 21st.

On September 7th or 9th of 2003, two other camp inmates were sent to the local jail for suspicion of sexual involvement with officers. The plaintiff recounts what type of sexual activity she and Goines or she and Martin engaged in at the camp . . . [and] on September 25, 2003, [t]he plaintiff purportedly gave a deposition, signed an affidavit, and was transferred to the local jail . . . .

. . . [T]he plaintiff complained that she had been at the FCDC, still "pending investigation," since September 25, 2003, and had not been permitted to file a grievance about any matter the entire time.

Record No. 10.

In her complaint, the plaintiff also explained her constitutional claims. Her First Amendment claim was against Defendant Warden Booker, Attorney General Ashcroft, and the BOP, on the ground that she was denied access to forms for seeking administrative remedies, BOP staff telling her that she could not use the BOP administrative process while she was not on federal grounds. Therefore, no administrative remedy procedure was available to her so that she could comply with 42 U.S.C. §1997e. As to her Fourth and Fourteenth Amendment allegations, the plaintiff claims

2

these same defendants knew of Goins'[1] and Martin's reputation for such conduct; knew that they were or had been under investigation for such conduct; and yet they did nothing to protect the female population, including herself, from these officers. This also serves as the basis for the plaintiff's substantive due process claim.

With regard to her Fourth Amendment rights, the plaintiff alleged that her right to be secure in her person was violated by the Defendant Officers Goins and Martin, in their official and individual capacities, because of their sexual conduct. Additionally, their conduct violated criminal laws and BOP Policy. Admitting that she consented to the sex, the plaintiff, nonetheless, also asserted a violation of the Eighth Amendment by Goins and Martin, for subjecting her to sexual misconduct, and against the warden, Ashcroft, and the BOP for their being deliberately indifferent to the risk of serious harm to her.

The plaintiff has claimed that she has a history of being a rape victim and "suffered mental anguish and emotional distress" because of the complained-of actions of the defendants; being placed in a jail location, isolated from friends and family; and from being denied counseling. In addition to seeking damages, the plaintiff sought injunctive relief in the form of access to BOP administrative remedies, appointment of a female liaison between the camp and the jail, a sentence reduction, and transfer to either a halfway house or home confinement.

After screening the complaint, the Court dismissed all damage claims against all of the named defendants in their official capacities; two named officers who investigated the alleged sexual activity; and all claims against the BOP. The Court ordered the issuance of summons for and service

---

[1]       The defendants' pleadings later showed that this officer's name is correctly spelled "Goins," and the Court will spell it correctly hereafter.

3

on John Ashcroft, Attorney General of the United States; Greg Goins; Curtis Martin; and Warden Joe Booker, in their official capacities for injunctive relief, and for Greg Goins and Curtis Martin in their individual capacities for damages.

Meanwhile, a few weeks after initiating the instant action, on February 13, 2004, the plaintiff was transferred out of the FCDC and into the Federal Prison Camp in Alderson, West Virginia, where she continues to reside. After all of the defendants were served with summonses, only Curtis Martin filed an Answer. Today's moving defendants were granted a stay of proceedings, in order to respond after the criminal trial of Officer Goins.

The criminal docket of this Court shows that after one hung jury and a re-trial before a jury, on October 15, 2004, Goins was convicted[2] of 8 counts of engaging in sexual activity with an inmate, in violation of 18 U.S.C. §2243(b); 1 count of causing an inmate to engage in sexual activity by threatening and placing victim in fear, in violation of 18 U.S.C. §2242(1); and 1 count of making a false statement in violation of 18 U.S.C. §1001. *United States v. Gregory W. Goins*, Lexington No. 04-CR-032-JMH-ALL. On January 26, 2005, Defendant Goins was sentenced to concurrent terms of imprisonment for nine years [Docket Entry 55], and in February he began his incarceration in the Federal Correctional Institution in Fort Dix, New Jersey. The matter is now on appeal.

The criminal docket also reveals that Officer Martin had earlier entered into a plea agreement in *United States v. Curtis J. Martin*, Lexington No. 04-CR-039-JBC-ALL. He pled guilty to one count of misdemeanor sexual activity with an inmate, in violation of 18 U.S.C. §2243(b), and on July 22, 2004, he was sentenced to one year of imprisonment, which was probated [Docket Entry 20].

---

[2]     On behalf of the United States, the instant plaintiff testified to several kinds of sexual activity, including intercourse, between her and Goins and to oral sex with Martin.

4

## DEFENDANTS' MOTION

As soon as Goins' trial was completed and the stay herein dissolved, the defendant warden and attorney general responded to the instant complaint with today's motion to dismiss or for summary judgment, which is supported by an attached memorandum and exhibits [Record No. 40]. Counsel, an Assistant United States Attorney, clarifies that she is representing these two defendants only and for the claims against them for injunctive relief only.

The defendants begin with additional information about the plaintiff. She was convicted of conspiracy to distribute cocaine and was sentenced to an 84-month period of imprisonment. The plaintiff surrendered herself to the BOP, at the Atwood Camp, on July 8, 2002, and she now has a projected release date of August 8, 2008. She was housed at Atwood for 14 months, from July 8, 2002, until September 25, 2003, when she was taken to the FCDC.

Supported with three attached declarations, the defendants explain that the Federal Medical Center has a Segregated Housing Unit for keeping inmates in need of separation for administrative, protective or disciplinary reasons. However, the "SHU" is only for the male inmates; if a female needs segregated housing, the BOP uses the FCDC. Therefore, when FMC-Lexington's Special Investigative Services ("SIS") were investigating rumored sexual contact between officers and inmates, and the plaintiff confessed to her sexual contact with Martin and Goins, on September 25, 2003, the plaintiff needed separate housing and was removed to FCDC to protect her and the investigation. The defendants could remain on the job until the rumors were substantiated.

The defendants' legal position is that the BOP's Program Statement ("P.S.") 5324.04, Sexual Abuse/Assault Prevention and Intervention Programs, which is attached, was followed and no rights abridged. They further argue that the plaintiff's requests for injunctive relief herein should be

5

dismissed for several reasons. The claim about a lack of a BOP administrative remedy system for inmates at the FCDC has been mooted by her transfer to another facility and by the fact that in February of 2004, BOP policy was changed and inmates at local jails now have access to the BOP administrative remedy procedures. With regard to her request for a sentence reduction, the defendants argue, the plaintiff does not cite any rationale for an entitlement thereto; and only the trial court would have jurisdiction to entertain such a request, under 18 U.S.C. §3582(c).

To the extent that the plaintiff seeks a transfer to a halfway house or home confinement, the defendants argue again, there is no basis for such a request, as the BOP "enjoys almost absolute discretion over assignment, transfer, and conditions of confinement." *Id.* at 5 (citing statutory and judicial law). Nor is there any basis or even need for either a liaison for female inmates at the Atwood satellite camp, or for a female Ph.D. psychologist at Atwood being available for counseling.

Finally, these defendants maintain that the plaintiff has failed to state a constitutional claim against them, consistent with case law, under the First, Fourth, Eighth, or Fourteenth Amendments. There is no evidence that either Booker or Ashcroft knew of and consciously chose to ignore that the plaintiff was at risk of sexual contact by the corrections officers; thus, there is no "deliberate indifference," a showing of a culpable state of their minds.

## Plaintiff's Response

In response [Record No. 43], the plaintiff also adds purported facts, alleging that during the SIS investigation, on September 9, 2003, two female inmates were removed to FCDC, and yet she remained at Atwood until the 25th and both of the participating officers remained at Atwood even after the 25th.

6

The plaintiff argues that her lack of recourse through the BOP administrative remedy system was a violation of her right to due process and to access the courts under the 14th amendment, and a violation of BOP policy, as found in the Policy Statements governing the administrative remedy process, in portions quoted by the plaintiff. She insists that since exhaustion of the process is mandatory under 42 U.S.C. §1997e, her deprivation of such a system, from September 25, 2003, until her February 13, 2004 transfer, was illegal. She also quotes excerpts from P.S. 5324.04, and claims that the defendants did not comply with it in several respects, specifically: she was never given a pamphlet about sexual abuse; neither her body nor her clothing was examined for evidence; there was no hearing, as required, within 7 days; and she was denied psychological aftercare.

The plaintiff asks that dismissal be denied, the Court being obligated to accept her allegations as true and view the facts in the light most favorable to the non-mover.

Defendants' Reply

The defendants have filed a reply [Record No. 44], to which they have attached a partial transcript of the plaintiff's testimony at the criminal trial of Officer Goins. They point to her admission therein that she and Goins took care not to be seen together and that she had initially denied the sexual contact. They stress that her testimony at trial was that when she did admit her and his behavior on September 25, 2003, she had actually had sex with Goins earlier that day but still lied. There is no evidence or allegation that she sought assistance from any guard, psychologist, or other Atwood staff member, or otherwise attempted to alert authorities of a problem at Atwood. Nor is there any evidence offered from any source to support her claim that the warden and attorney general knew of and disregarded a risk to the plaintiff's health or safety; she does not refute the warden's declaration.

7

The defendants repeat their bases for denying the injunctive relief sought. Additionally, they provide a copy of an unpublished opinion by a panel of the United States Court of Appeals for the Sixth Circuit, which held that there is no inherent First Amendment right to an administrative remedy process. Additionally, the Court held, so long as a prisoner-plaintiff had an opportunity to present his or her claim in court, a right of access claim under the First Amendment is not implicated. *Young v. Gundy*, 30 Fed.Appx. 568, 2002 WL 373740.

## APPLICABLE STANDARDS

To state a claim that is cognizable as an action pursuant to 28 U.S.C. §1331 and *Bivens,* the plaintiff must plead two essential elements. The plaintiff must show, first, that he or she has been deprived of rights secured by the Constitution or laws of the United States and, second, that the defendants allegedly depriving him or her of those rights acted under color of federal law. *Bivens,* 403 U.S. at 397. In essence, the defendants' position is that the instant plaintiff cannot establish the first of these elements, *i.e.*, a violation of her federal rights.

The Court has also examined the standards for dismissal and for summary judgment. Under Federal Rule of Civil Procedure 12(b)(6), dismissal is available if the claimant fails to state a claim upon which this Court may grant relief. Additionally, the rule continues, in pertinent part, as follows:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Fed.R.Civ.P. 12(b)(6). Because the Court has considered the declarations attached to the defendants'

8

motion, the Court has also studied the standards for granting summary judgment.

In determining a motion for summary judgment, the Court must determine that there are "no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(c). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322 (1986). A court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The significant question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-53 (1986).

In deciding a motion for summary judgment, therefore, the moving party has the burden of showing there is an absence of evidence to support a claim. *Id.* at 324-25. After a moving party carries its burden, the non-moving party must go beyond the pleadings to designate by affidavits, depositions, answers to interrogatories, and admissions on file, specific facts showing that there is a genuine issue of material fact for trial. *Id.* If the non-movant completely fails to prove an essential element of his or her case, then all other facts are rendered immaterial. *Id.* at 322-23.

Because the defendants contend both that the plaintiff has failed to meet the applicable standards for any of her constitutional claims and that they are entitled to qualified immunity, the Court examines the standard for the latter, also. Qualified immunity is described by the Supreme Court of the United States as follows: "Government officials performing discretionary functions

9

generally are shielded from liability for civil damages insofar as their conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would have known."

*Harlow v. Fitzgerald*, 457 U.S. at 818.   The Sixth Circuit has set out a tripartite procedure for

evaluating claims of qualified immunity, the first step of which is to determine whether a

constitutional violation occurred.  *See Dickerson v. McClellan*, 101 F.3d 1151, 1157-58 (6th Cir.

1996).

> Therefore, the question of whether the named defendants are entitled to qualified immunity

is the same as the initial question herein, *i.e.*, whether the plaintiff has established that a

constitutional violation occurred.  The plaintiff has the burden of establishing both that her rights

were violated and that the defendants are not entitled to qualified immunity.  *Wegener v. Covington*,

933 F.2d 390, 392 (6th Cir. 1991); *Williams v. Mehra*, 186 F.3d 685, 692-93 (6th Cir. 1999) (quoting

*Celotex*, 477 U.S. at 322).

## DISCUSSION

> This Court starts with the fact that derivative or *respondeat superior* liability is not applicable

to a *Bivens* action.  *Terrell v. Brewer*, 935 F.2d 1015, 1018 (9th Cir. 1991).  Supervisory government

employees generally cannot be held accountable for the actions of subordinates, because lower level

employees are not the employees or agents of their supervisors, but are fellow servants of the United

States, which is immune from suit.  *Sportique Fashions, Inc. v. Sullivan*, 597 F.2d 664, 666 (9th Cir.

1979).  Similarly, insufficient supervision and training, policy, and ratification claims are generally

not proper in a *Bivens* case.  *See e.g., Ting v. United States*, 927 F.2d 1504 (9th Cir. 1991).

> Therefore, the Court must examine the allegations made against the moving defendants for

their personal actions and not their supervisory role.  In the instant case, the Court begins with the

types of permissible relief which the plaintiff has demanded of them, beginning with injunctive relief; then the Court will examine the claims for damages, paying attention to their personal involvement in any complained-of acts. For the reasons to be set out hereafter, the Court must agree with the defendants that most of the requests of the instant plaintiff for injunctive relief have been mooted by her transfer to Alderson.

The Sixth Circuit has written, "Under Article III, [a court] 'may only adjudicate actual, ongoing controversies.'" *Briggs v. Ohio Elections Comm'n*, 61 F.3d 487, 492 (6th Cir. 1995) (quoting *Honig v. Doe*, 484 U.S. 305, 317 (1988)). "Mootness results when events occur during the pendency of the litigation which render the court unable to grant the requested relief." Nothing remains to be enjoined or declared improper. *Berger v. Cuyahoga Cty. Bar Ass'n*, 983 F.2d 718, 724 (6th Cir.), *cert. denied*, 113 S. Ct. 2416 (1993) (quoting *Carras v. Williams*, 807 F.2d 1286, 1289 (6th Cir. 1986)). *See also Kellogg v. Shoemaker*, 46 F.3d 503 (6th Cir. 1995), *cert. denied*, 116 S. Ct. 120 (1995).

In other words, a prisoner's claims for injunctive relief are mooted upon that prisoner's release or transfer, as there is no longer a case or controversy. *See Weinstein v. Bradford*, 423 U.S. 147, 148 (1975) (per curiam); *Goar v. Civiletti*, 688 F.2d 27, 29 (6th Cir. 1982). Even the entry of injunctive relief in the plaintiff's favor would have no effect on these defendants' behavior. *See White v. State*, 82 F.2d 364, 366 (10th Cir. 1996) (holding that inmate plaintiff's claims for injunctive relief were mooted by his release from incarceration). The Court no longer being presented with a case or controversy with regard to an available grievance system, a liaison, or psychological counseling at FCDC, the plaintiff's claims therefor will be dismissed on the ground that they are moot, in light of her transfer to Alderson.

11

Additionally, with regard to the plaintiff's requests for a sentence reduction, this Court clearly does not have jurisdiction. As to a transfer to home confinement or a halfway house, the defendants are also correct that she is statutorily ineligible for either such move until closer to her projected release date, August 8, 2008. *See* 18 U.S.C. 3624(c); *Colton v. Ashcroft*, 299 F. Supp.2d 681 (E.D.Ky. 2004).

With regard to moving her to a better federal location elsewhere, the plaintiff has no right to confinement at any location, however undesirable, the sole power to decide location being seated in the BOP. 18 U.S.C. §3622; *Meachum v. Fano*, 427 U.S. 215 (1976) and *Olim v. Wakinekona*, 461 U.S. 239 (1983). Moreover, district courts are ever warned to stay out of the business of micro-managing prisons. *See Bell v. Wolfish*, 441 U.S. 520 (1979); *Turner v. Safley*, 482 U.S. 78 (1987); and *Turney v. Scroggy*, 831 F.2d 135 (6th Cir. 1987).

With regard to the plaintiff's requests for damages, she has failed to state a claim upon which the Court may grant relief with regard to the above-listed issues. Additionally, as to the First Amendment claims, it is true that there is no First Amendment or other inherent right to a prison grievance procedure; and no access to courts claim so long as the prisoner has not been denied his or her right to file a lawsuit, such as the instant prisoner action. *Young*, 30 Fed.Appx. at 569, ** 2. An access to courts claimant must specify what harm, if any, resulted from the alleged deprivation. *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985). *See also*, *Brown v. Withrow*, 985 F.2d 559, 1993 WL 15141 (6th Cir. 1993) (unpublished).

As to her purported due process or Eighth Amendment claims, the plaintiff has offered up no evidence that either the warden or the attorney general knew of a risk to her posed by the errant officers, before her confession and removal to the FCDC, both occurring on September 25, 2003.

12

She has submitted no refutation to the warden's declaration as to these events or these defendants' professed lack of knowledge. To hold a prison official liable for a rape, the prisoner must show that the official showed "deliberate indifference to a substantial risk of harm." *Long v. McGinnis*, 97 F.3d 1452, 1996 WL 528943 (6th Cir. 1996) (unpublished) (citing *Farmer v. Brennan*, 114 S.Ct. 1970, 1974 (1994)). The instant plaintiff has not done so.

Finally, to the extent that the plaintiff's allegations are construed to include a claim that the special housing of females in the FCDC unconstitutionally denies them the conditions males enjoy in special housing at the federal facility, the plaintiff has failed to state a claim. *See Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985). The plaintiff has not demonstrated that these defendants took an action or failed to take an action whereby she was victimized as a female. An equal protection claim which is not supported by factual allegations is dismissable as being only conclusory. *See Blackburn v. Fisk University*, 443 F.2d 121 (6th Cir. 1971).

## CONCLUSION

The Court concludes that the defendants have carried their summary judgment burden as movants, using information outside their answer to show that there is an absence of evidence to support the claim against them (*Celotex Corp. v. Catrett*, 477 U.S. at 324-25). The plaintiff has failed to carry her burden as a party in opposition to the defendants' motion. She has failed to come forward with "affirmative evidence to defeat a properly supported motion for summary judgment" (*Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 257). The current record contains only the plaintiff's original allegations and later arguments.

"Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves, and it is from

13

this list that one would normally expect the non-moving party to make the showing . . . ." *Celotex Corp. v. Catrett*, 477 U.S. at 324. A plaintiff must employ proof other than his pleadings to establish the existence of specific triable facts. *Id.* The instant plaintiff has presented none. Conclusory statements will not defeat a motion for summary judgment. *Matsushita*, 475 U.S. at 587. The plaintiff has failed to go beyond the pleadings to designate facts showing that there is a genuine issue of material fact for trial. *See Anderson*, 477 U.S. at 248.

"Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587. Because the Court concludes that there is no genuine issue of material fact and that the defendants are entitled to judgment as a matter of law, the Court will grant the defendants' motion for summary judgment and dismiss them from the instant action with prejudice. The matter may go forward only against named defendants Goins and Martin, in their individual capacities, for damages.

Accordingly, the Court being advised, **IT IS ORDERED** as follows:

(1)    The motion of the defendants to dismiss or for summary judgment [Record No. 40] is **GRANTED**.

(2)    Defendants Joe Booker and John Ashcroft are **DISMISSED, WITH PREJUDICE.**

This the _____ day of May, 2005.

_____
KARL S. FORESTER, SENIOR JUDGE

14